**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re                                                        :
                                                             :    Chapter 11
EMC HOTELS AND RESORTS, LLC,                                 :
                                                             :    Case No. 18-22932 (RDD)
                                      Debtor.                :
-----------------------------------------------------------------x

**DECLARATION OF FRED STEVENS, CHAPTER 11 TRUSTEE OF EMC
HOTELS AND RESORTS, LLC, PURSUANT TO 28 U.S.C. § 1746: (I) IN
SUPPORT OF THE TRUSTEE'S INITIAL MOTIONS; AND (II)
CONTAINING INFORMATION REQUIRED PURSUANT TO LOCAL
<u>BANKRUPTCY RULE 1007-2</u>**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................... 2
II.   INTRODUCTION ....................................................................................... 3
III.  BACKGROUND ......................................................................................... 4
      A.   The Debtor's Formation and Construction of the Hotel ........................ 4
      B.   Related Entity – The Bronxville Project ............................................. 5
      C.   Capital Structure – Debt ................................................................. 6
           1.   Bank Hapoalim B.M. – Senior Secured Lender ............................. 6
           2.   Nyack Hotel Fund LLC – EB-5 Debt – Junior Mortgage Holder ................. 7
           3.   ZSC NYLO Fund LLC – Unsecured EB-5 Debt ............................. 8
           4.   BT Hotel Operating LLC - Judgment ......................................... 8
           5.   Property Taxes and Potential Mechanics' Liens ............................ 9
           6.   BCG Ritz Trump, LLC – Potential Liability ................................ 9
           7.   Trade Debt ........................................................................ 9
           8.   Summary of Currently Identified Liabilities and Potential Liabilities ........ 9
      D.   Operations ................................................................................. 10
           1.   Management of the Hotel ....................................................... 10
           2.   Restaurant, Food and Beverage at the Hotel ............................... 14
           3.   Insurance ......................................................................... 16
      E.   Factors Leading to the Instant Bankruptcy Case ............................... 18
IV.   INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2 ........... 20
V.    INITIAL OR "FIRST DAY" MOTIONS ....................................................... 22
      A.   Cash Collateral Motion ................................................................ 23
      B.   Authority to Continue to Operate Pursuant to Management Agreement ......... 27
      C.   Employee Wage Motion ................................................................ 27
      D.   Critical Vendor Motion ................................................................ 30
      E.   Professional Retentions ................................................................ 32
           1.   KWJS&S ........................................................................... 32
           2.   CBIZ ............................................................................... 33
      F.   Utilities Motion ......................................................................... 34
      G.   Tax Motion ............................................................................... 35
VI.   CONCLUSION ........................................................................................ 36

**EXHIBIT A** – Twenty Largest Unsecured Creditors

**EXHIBIT B** – Five Largest Secured Creditors

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

I, FRED STEVENS, declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.      I am the Chapter 11 Trustee (the "Trustee") of EMC Hotels and Resorts, LLC, the above-captioned debtor (the "Debtor"), which has been a debtor under Chapter 11 of Title 11 of the Bankruptcy Code since July 20, 2018 (the "Relief Date").  I was appointed as Trustee by William K. Harrington, United States Trustee for Region 2 (the "U.S. Trustee") on July 25, 2018 and my appointment was subsequently approved by Order of this Court [Docket No. 34].

2.      I submit this declaration (the "Declaration") in support of the various initial motions (collectively, the "Initial Motions") submitted by the Trustee at or around the same time as this Declaration.[1]  My tenure as Trustee has been short, and accordingly, my knowledge of the Debtor and its affairs has been accumulated on an expedited basis both personally and with the assistance of my proposed professionals and existing management.  The information contained in this Declaration is based upon (i) my review or the review of partners or associates of Klestadt Winters Jureller Southard & Stevens, LLP ("KWJS&S"), my proposed general counsel, or employees of CBIZ Accounting, Tax & Advisory of New York, LLC ("CBIZ"), my proposed financial advisors, of certain books and records of the Debtor; (ii) discussions with and information furnished by alleged owners and principals of the Debtor, the day-to-day operations manager of the Debtor's hotel, representatives of HHM Nyack, LLC (the "Manager"), the third-party manager of the hotel, representatives of BV Grill Nyack, LLC ("BV Grill")[2], the operator of the restaurant and food and

---

[1]   The motions characterized as "initial motions" are quite often referred to as "first day motions" based upon the types of relief being sought.  However, given that the relevant motions are being submitted over six weeks after the June 18, 2018 filing date, and approximately three weeks after the Relief Date, we have characterized the motions as "initial" rather than "first day."

[2]   There is a dispute regarding the actual ownership of BV Grill.  The Trustee has not yet taken a position with respect to the proper ownership and management of BV Grill and accordingly, any statements or references to BV Grill or its management are not intended to be an admission, concession or waiver by the Trustee of any of the Trustee's rights or remedies with respect to same.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

beverage services at the Debtor's hotel (the "Restaurant"), and representatives of the petitioning

creditors, certain lenders and other creditor groups; and (iii) my opinion based upon my experience

and knowledge.

## I.    PRELIMINARY STATEMENT

3.    The Debtor owns the Time Nyack Hotel, a 133-room hotel in Nyack, New York (the

"Hotel") and manages the Hotel through the third-party Manager.  The Restaurant is owned by BV

Grill and operates at the Hotel pursuant to a purported lease between BV Grill and the Debtor.  The

Restaurant is operated by a third-party affiliated with the popular Bobby Van's steakhouses in

New York City.  The Trustee was appointed amidst significant disputes and litigation between alleged

owners and principals of the Debtor vying for control of the Debtor and its Hotel, and the Debtor and

BV Grill over their relationship.

4.    Further, upon the Trustee's appointment, the Debtor's primary secured financing had

matured without repayment, most vendors were refusing or threatening to refuse service pending

payment, an over-$5.9 million judgment had just been entered against the Debtor in connection with

the termination of a prior management agreement, the Manager had just obtained control over the

Debtor's operating accounts, BV Grill had not paid rent to the Debtor in months, if ever, while accusing

the Debtor by prior management of usurping funds when prior management controlled common

accounts, and the temporary certificate of occupancy for the Hotel expired or was subject to termination

for failure to take actions required by the Village of Nyack.  Right up to the filing of this Declaration,

owners and alleged owners of the Debtor waged a war against one another in the press and in litigation.[3]

---

[3]  Steve Lieberman, *TIME Nyack investor fights back vs. 'smears' as bankruptcy trustee investigates*,
Rockland/Westchester Journal News, Aug. 9, 2018, 11:30 a.m. ET; Available from
https://www.lohud.com/story/news/local/rockland/2018/08/09/time-hotel-investor-costa-fights-back-against-smears-criminality/935057002/

5.      The Trustee's primary focus since his appointment has been to meet with the key

parties and add stability to the Debtor and its operations so that an appropriate exit strategy can be

determined and employed for the protection of the Debtor, its estate, creditors and all constituencies.

I believe that the relief sought in the Initial Motions is necessary to the Debtor, the Hotel's operation

and the preservation of the Debtor's value for the benefit of the estate and creditors.

## II.    INTRODUCTION

6.      On June 18, 2018 (the "Petition Date"), Evolve Controls, CJB Asset Management

Group LLC, and Consolidated Companies Inc. d/b/a Best Landscape (collectively, the "Petitioning

Creditors") filed an involuntary petition against the Debtor for relief under chapter 7 of Title 11 of

the United States Code (the "Bankruptcy Code").

7.      On June 29, 2018, the Petitioning Creditors filed a Motion for the Appointment of

an Interim Trustee (the "Trustee Motion") [Docket No. 12], and the Debtor filed a motion to

dismiss the involuntary petition and for abstention (the "Dismissal Motion") [Docket No. 13].

8.      On July 15, 2018, the Debtor filed a motion to convert the Debtor's involuntary

chapter 7 case to a voluntary chapter 11 case [Docket No. 27], which rendered the Dismissal

Motion moot. The motion was granted by Order dated July 20, 2018 (the "Conversion Date")

[Docket No. 30].

9.      On the July 20, 2018 Relief Date, this Court entered orders: (i) converting the

Debtor's involuntary chapter 7 case to a voluntary chapter 11 case [Docket No. 31]; and (ii)

granting the Trustee Motion and directing the United States Trustee to appoint a chapter 11 trustee

[Docket No. 30].

10.     On July 25, 2018, the United States Trustee appointed me as the chapter 11 trustee

of the Debtor [Docket No. 32], and the Court entered an order approving my appointment [Docket

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

No. 34].    On the same date, the Trustee employed KWJS&S to serve as his general counsel and

CBIZ to serve as his financial advisors in the Debtor's case, subject to the approval of this Court.

11.    On August 6, 2018, the Court entered an order for relief in the Debtor's case *nunc pro tunc* to the July 20, 2018 Relief Date [Docket No. 40].

### III.    BACKGROUND

#### A.  The Debtor's Formation and Construction of the Hotel

12.    According to certain parties, the concept for constructing the Hotel was conceived in or around 2012 by Michael Yanko ("Yanko") and Howard Dean ("Dean").  Trustee Motion, ¶4.

13.    The Debtor is a limited liability company formed under the laws of the State of New York on or around January 10, 2014.  The Debtor's name has changed at least twice from NYLO Nyack LLC to WY Time Hotel, LLC (the "WY" standing for Wellington-Yanko) on July 14, 2015 and then to its current name, EMC Hotels and Resorts LLC (the "EMC" standing for Edgar M. Costa), on March 19, 2018.  The Debtor was formed for the purpose of acquiring property at 400 High Avenue, Nyack, New York and developing the Hotel.  Trustee Motion, ¶4.

14.    EMC Real Estate Holdings, LLC, f/k/a Key Real Estate Holdings, LLC ("Holdings") is a limited liability company formed under the laws of the State of New York on or around April 22, 2014.  Holdings became the majority owner of the Debtor and was or is owned by some combination of Donald F. Wellington and Kerry P. Wellington (collectively, the "Wellingtons"), Yanko and Edgar M. Costa ("Costa").  However, Holdings' ownership interest in the Debtor was pledged to certain creditors as more fully set forth below.  The current ownership of Holdings, or the manner by which current ownership was obtained, is very much in dispute. See e.g., Donald F. Wellington and Kerry P. Wellington v. Edgar Melo Costa, Index No. 155822/2018 (N.Y.S. Sup. Ct. Jul. 19, 2019), Complaint at Docket No. 2 (the "Wellington

4

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Complaint"). The minority interest in the Debtor is owned by HD DEV NYLO, LLC, a New York limited liability company which was formed on or around April 28, 2014 by Dean.

15.     The construction of the Hotel was financed primarily with borrowed funds as set forth more fully below and the Hotel was opened for business in or around May 2016.[4]

### B. Related Entity – The Bronxville Project

16.     On or around June 10, 2013, EMC Bronxville Metropolitan LLC, f/k/a MetLoft Bronxville, LLC (the "Bronxville Debtor") was formed as a New York State limited liability company to develop a condominium project in Bronxville, New York.  Given its close relationship with the Debtor, some discussion of the Bronxville Debtor is required.

17.     The Wellingtons, among possibly other individuals connected with the formation of the Debtor and construction of the Hotel, became owners of and/or investors in the Bronxville Debtor.  Trustee Motion, ¶8.

18.     Although it remains subject to a thorough future investigation by the Trustee, the Bronxville Debtor appears to share owners, managers and creditors with the Debtor.  Among other things, Costa asserts ownership and control of the Bronxville Debtor, which ownership and control is part of the same dispute as Costa's ownership of the Debtor.  See Wellington Complaint.

19.     On June 22, 2018, certain creditors filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against the Bronxville Debtor in this Court.  See In re EMC Bronxville Metropolitan LLC, Debtor, Case No. 18-22963 (RDD) (Bankr. S.D.N.Y. June 22, 2018) (the "Bronxville Case").  Upon the Bronxville Debtor's motion, the Bronxville Case was converted to a voluntary chapter 11 case on July 23, 2018.  The petitioning creditors in the

---

[4]  Certain parties, including Donald F. Wellington, assert that they invested significant equity capital into the Debtor as well.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Bronxville Case are currently seeking the appointment of a trustee for the Bronxville Debtor with

a motion returnable before this Court on September 13, 2018 at 10:00 a.m.

20.     Both the Debtor and the Bronxville Debtor: (i) were or are being run by Costa; (ii)

are the subject of significant disputes between the Wellingtons and Costa; and (iii) are represented

by Rattet PLLC.  Further, the petitioning creditors in both cases are represented by The Sarachek

Law Firm.

### C.  Capital Structure – Debt

21.     At the time of making this Declaration, the Debtor has not filed schedules and the

Trustee has not located reliable books and records for most of the Debtor's operations that are not

available through the Manager.  The Trustee is still working diligently with his professionals to

determine exactly how much debt the Debtor has.  The Petitioning Creditors estimate the debt to

be "over $30,000,000 . . . , including $600,000 owed to trade creditors."  Trustee Motion, ¶10.

Notwithstanding the difficulty in understanding the Debtor's capital structure, I have reviewed the

lending documents of the primary secured lenders in connection with the relief sought by the Initial

Motions and all other available documents.

### 1.  *Bank Hapoalim B.M. – Senior Secured Lender*

22.     On June 9, 2016, the Debtor, as Borrower, and Bank Hapoalim B.M. ("BHI"), as

Lender, entered into a certain Loan Agreement (the "BHI Loan Agreement), wherein BHI agreed

to loan to the Debtor an amount up to nineteen million dollars ($19,000,000).  On the same date,

the Debtor issued to BHI a Consolidated, Amended and Restated Promissory Note (the "BHI

Promissory Note") in the amount of $19,000,000 with interest accruing at the LIBOR Rate, plus

five and fifteen one-hundredths percent (5.15%) per annum.  On the same date, the Debtor, as

Mortgagor, and BHI, as Mortgagee, entered into a Consolidated, Spreader Amended and Restated

Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage and Security

6

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Agreement"), wherein the Debtor granted to BHI liens and security interests (the "BHI Prepetition Liens") in substantially all of its assets (the "BHI Pre-Petition Collateral"), including without limitation its cash (the "Cash Collateral").

23.      BHI estimates the current amount owed to BHI to be around $18.7 million, but with a full reservation of rights.  The BHI Loan matured by its terms on or around December 9, 2017.

### 2. Nyack Hotel Fund LLC – EB-5 Debt – Junior Mortgage Holder

24.      The Debtor also borrowed approximately $10 million in principal under a program called EB-5 which encourages foreigners to invest in the United States and create American jobs in exchange for U.S. green cards (the "EB-5 Loans").  $2 million of the $10 million principal in EB-5 Loans was borrowed from Nyack Hotel Fund LLC ("Nyack Hotel Fund") and is secured by a mortgage against the Hotel that is expressly subordinate to BHI's rights under the Mortgage and Security Agreement as set forth below.

25.      Pursuant to the terms, provisions and conditions set forth in that certain Loan Agreement dated as of July 15, 2015 ("Nyack Hotel Fund Loan Agreement") executed by the Debtor, as Borrower, and Nyack Hotel Fund, Nyack Hotel Fund has made a loan to the Debtor in the aggregate principal amount of two million dollars ($2,000,000.00) (the "Nyack Hotel Fund Loan").

26.      The Nyack Hotel Fund Loan is evidenced by that certain Promissory Note dated as of September 10, 2015, made payable by the Debtor, as Maker, to Nyack Hotel Fund, as Payee, in the aggregate original principal amount of two million dollars ($2,000,000.00) (the "Nyack Hotel Fund Note"), and it is secured by, among other things, that certain Mortgage, dated as of September 10, 2015 made by the Debtor, as Mortgagor, and Nyack Hotel Fund, as Mortgagee, encumbering the Hotel (the "Nyack Hotel Fund Prepetition Liens").  The Trustee does not believe that Nyack Hotel Fund holds a lien on the Debtor's Cash Collateral, or if it does as proceeds of the property

7

subject to the Nyack Hotel Fund Prepetition Liens, it is expressly subordinated to BHI as set forth below.

27.     On June 9, 2016, BHI, as Senior Lender, and Nyack Hotel Fund, as Subordinated Lender, entered into a certain Subordination and Intercreditor Agreement whereby Nyack Hotel Fund agreed to subordinate the Nyack Hotel Fund Note and the Nyack Hotel Fund Prepetition Liens to the BHI Note and BHI's Prepetition Liens and agreed that it would not enforce any of its rights until the BHI Note is paid in full.

28.     According to Nyack Hotel Fund, it is owed approximately $2,414,152.78 on the Nyack Hotel Fund Loan as of July 1, 2018.

### 3.   ZSC NYLO Fund LLC – Unsecured EB-5 Debt

29.     The remaining $8 million of the $10 million principal EB-5 Loans was borrowed from ZSC NYLO Fund LLC ("ZSC") and is secured by Holdings' membership interest in the Debtor.  According to ZSC, it is owed approximately $11,162,300 on its EB-5 loan as of July 1, 2018.  All aspects of both parts of the EB-5 Loans are expressly subordinated to the BHI Loan and BHI's rights.

### 4.   BT Hotel Operating LLC - Judgment

30.     BT Hotel Operating LLC ("BT Hotel") obtained an arbitrators' award against the Debtor in the amount of $2,790,400 in damages and $2,947,939.73 in fees and expenses for a total of $5,926,934.54, plus interest, in connection with the termination of a contract pursuant to which BT Hotel was to operate and manage the Hotel.  See BT Hotel Operating LLC v. WYINC Development LLC, et al., Case No. 01 15 0003 4966 (Amer. Arb. Assoc. 2018).  The record of the BT Hotel arbitration has been sealed.  The BT Hotel obtained a judgment on account of its award and filed it with the Rockland County Clerk on May 11, 2018.

### 5.  Property Taxes and Potential Mechanics' Liens

31.    A title search dated April 11, 2018 shows: (A) outstanding property taxes of at least $362,286.04; and (B) the following mechanic's liens: (i) Millennium Karnes, Ltd. - $411,863.28; (ii) Flex-Wall Systems of New York, Inc. - $6,670.30; (iii) Expressive Lighting Inc. - $17,256.96; (iv) Evolve Guest Controls, LLC - $82,344.73; and (v) McClosky Purchasing Group Ltd. - $55,919.50. It is unclear if any of the mechanics' liens are valid and outstanding.

### 6.  BCG Ritz Trump, LLC – Potential Liability

32.    The Trustee has also located a partially signed loan agreement dated July 2016 where the Debtor and the Bronxville Debtor are co-debtors on a $6.5 million principal loan from BCG Ritz Trump, LLC.  The extent, validity and priority of this obligation, if any, has not been determined.

### 7.  Trade Debt

33.    From the information presently available, the Trustee estimates that trade payables are approximately $1 million, including over $500,000 owed to the Manager for management fees.

### 8.  Summary of Currently Identified Liabilities and Potential Liabilities

34.    The following is a summary of the Debtor's liabilities or potential liabilities as currently known to the Trustee:

| Creditor or Creditor Group | Approximate Indebtedness or Potential Indebtedness | Collateral, If Any[5] | Notes |
|---|---|---|---|
| Rockland County / Town of Orangetown / Village of Nyack | Not less than $362,286.04 | First priority lien on all real property | Based upon an April 2018 title report – expected that additional unpaid taxes have accrued |

---

[5]   The Trustee full reserves his right to contest the extent, validity and priority of any claim, lien or encumbrance.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

| BHI | $18,700,000.00 | Generally all real estate, personal and intangible property of Debtor | Loan matured on or around December 9, 2017 |
|---|---|---|---|
| Nyack Hotel Fund LLC | $2,414,152.78 | Real property and all proceeds thereof | Loan and security expressly subordinate to BHI |
| ZSC NYLO Fund LLC | $11,162,300.00 | No collateral interest in Debtor property; secured by Holdings' equity in Debtor | Expressly subordinate to BHI |
| BT Hotel Operating LLC | $5,926,934.54 | Real Property by Judgment Lien | Judgment filed on or around May 11, 2018 and to the extent valid, is believed to be avoidable pursuant to 11 U.S.C. §547 |
| BCG Ritz Trump | $6,500,000.00 | No collateral interest in Debtor property; secured by Holdings' equity in Debtor | Bronxville Debtor is co-debtor. Unclear present status of indebtedness or whether Debtor is or should be liable |
| Trade Creditors | $1,000,000.00 | None | Subject to full investigation.[6] |

Based upon the foregoing, the Debtor's pre-petition obligations may be in excess of $45 million.

### D.  Operations

#### 1.  *Management of the Hotel*

35.     On or around, May 22, 2015, the Debtor entered into a contract (together with

amendments dated July 14, 2015 and July 6, 2018, the "Management Agreement") with the

Manager, an affiliate and/or subsidiary of Dream Hotel Group, LLC, owners and/or operators of

the Dream Hotels in New York City, South Beach, Hollywood, Phuket and Bangkok, The Time

New York, the Unscripted Durham, the Night Times Square and Night Theater District, and a

---

[6]  Certain of these creditors may be entitled to administrative priority under 11 U.S.C. §503(b)(9) or security interests under New York State mechanics' lien or trust funds under Article 3-A of the New York Lien Law.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

number of other hotels.    At inception, the Management Agreement provided for Manager to manage the construction of the Hotel.

36.     Pursuant to the Management Agreement, the Manager manages the Hotel and uses its brand, trademarks and intellectual property, including "THE TIME" name in connection with the operation.  The Manager is entitled to a number of fees and reimbursements in connection with its services but had not been paid pursuant to the Management Agreement for a significant period prior to the Relief Date and asserts that it is owed more than $544,000 in connection with its prior management and pre-opening and design review services.

37.     Among others, the Management Agreement includes the following salient terms:[7]

a.  <u>Appointment as Exclusive Manager</u> - The Manager is appointed as the exclusive manager to manage the Hotel.  The Manager has exclusive supervision, control and discretion in, and responsibility for, the management, maintenance and operation of the Hotel.  Management Agreement, §3.1.

b.  <u>Term</u> – Twenty (20) full calendar years after opening in 2016 (i.e., through December 31, 2036) with the right of both parties to extend the term for two consecutive five-year periods. Id. §2.6.

c.  <u>Limitations on Manager</u> – Manager may not unilaterally: (i) enter into certain contracts that obligate the Debtor for more than one year (that cannot be cancelled on 90 days' notice) or for more than $50,000; (ii) enter into agreements with others to conduct commercial activity on the Hotel premises; (iii) hire lawyers, accountants or other professionals for the Debtor; (iv) prosecute or defend disputes on the Debtor's behalf where the amount in controversy is more than $50,000 and as to which insurance has denied coverage; or (v) borrow money on behalf of Debtor except regular trade payables. Id. §3.1(b).

d.  <u>Working Capital</u> – The Debtor is obligated to maintain sufficient funds in its operating accounts for the conduct of business and repairs and maintenance of the

---

[7]  This is intended as a summary only and parties wishing to have a complete understanding of the Management Agreement should refer to the Management Agreement itself and not rely upon this summary.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Hotel. The Manager's operation of the Hotel is done at the Debtor's expense. Id. §§3.4-3.5.

e. <u>Employment of Personnel</u> – Manager has the sole and exclusive right to recruit, hire, promote, discipline, discharge, supervise, direct, train, transfer and determine the terms of employment of the Debtor's employees involved in the operation of the Hotel. Id. §4.1.

f. <u>Routine Repairs and Maintenance</u> – Manager, at the expense of Debtor, shall perform routine repairs and maintenance at the Hotel in order to maintain and operate the Hotel in good working order and condition. Id. §5.1.

g. <u>Books and Records; Operating Accounts</u> – Manager shall keep full and adequate books of account and records relating to or reflecting the results of operation of the Hotel. Id. §6.2.

h. <u>Monthly Reports</u> – Manager is required to provide monthly reports to the Debtor regarding the operation of the Hotel.[8] Id. §6.5.

i. <u>Management Fees</u> – Among others, the Manager is entitled to a "Base Fee" equal to three (3%) percent of the total operating revenue[9] for the first twenty-four (24) months after the opening of the Hotel, and three and one-half percent (3.5%) thereafter; and an "Incentive Fee" equal to a ten percent (10%) of the amount where gross operating profit[10] exceeds what was budgeted during the first two years of operation of the Hotel and twenty percent (20%) thereafter, and a "Brand Marketing Fee" of one and one-half (1½%) of total operating revenue (collectively, the "<u>Management Fees</u>"). Id. §7.1.

j. <u>Insurance</u> – The Debtor is responsible for and required to maintain adequate insurance, and for paying the costs and expenses of Manager for any insurance for which the Manager is responsible or which the Manager may obtain on behalf of the Debtor. Id. §§8.1; 8.5.

---

[8] The Trustee has received daily reports from the Manager since his appointment.

[9] Total Operating Revenue includes all revenues, receipts and income of every kind derived from operation of the Hotel, but excludes certain items, such as excise and sales tax, insurance proceeds, recoveries in legal actions, proceeds from financing or sale of the Hotel, rebates, discounts and credits.

[10] Gross Operating Profit means, for any period, the excess of Total Department Profit, as that term is in Uniform System of Accounts for the Lodging Industry, as adopted by the American Hotel & Lodging Association ("<u>Uniform Systems of Accounts</u>"), over Total Undistributed Expenses, as that term is used in the Uniform Systems of Accounts.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

___

k.  <u>Indemnities</u> – Manager indemnifies the Debtor for any liabilities caused by its gross negligence or willful misconduct.  The Debtor indemnifies the Manager for any liabilities of Debtor and any liabilities arising out of or incurred in connection with the construction, renovation, ownership, condition, management or operation of the project, whenever arising, except to the extent of Manager's indemnity obligation. Id. §§9.1-9.2.

38.    On July 6, 2018, after the Petition Date, but prior to entry for an order of relief, the Debtor and the Manager executed a letter agreement, which confirmed the pre-existing contractual rights of Manager under the Management Agreement and acknowledged that the Manager would have sole control over the Debtor's credit card relationships and operating accounts at T.D. Bank, N.A. (the "<u>Operating Accounts</u>").  Upon information and belief, this amendment was prompted by the Debtor's failure to pay certain necessary vendors and other parties which significantly disrupted the Manager's ability to manage the Hotel pursuant to the Management Agreement. Since the Trustee's appointment, the Debtor's Operating Accounts controlled by the Manager have been modified to require the Trustee's signature on each check and the Trustee's authorization for each funds transfer.  Further, the Trustee has established his own Trustee accounts at Rabobank through BMS to house any excess funds from the Operating Accounts and any other funds recovered by the Trustee on behalf of the Debtor and its estate.

39.    The Trustee intends to continue to employ Manager's services under the Management Agreement and to compensate the Manager for such services rendered after the Relief Date pursuant to the Management Agreement.  The Trustee believes that the Management Fees are reasonable and at or below-market for the hotel industry.[11]

___

[11]    The Trustee reviewed the average costs for management, franchise and brand affiliation costs for twenty-five midscale and upper-midscale hotel brands and nineteen upscale hotel brands for 2016/17 in the United States.  The cost of such brand affiliations and services were between 12.4% and 14.1% of rooms revenue for upscale brands like Hilton, Marriott and Doubletree, and between 4.4% and 12.9% for midscale brands like Best Western, Ramada Inn and Candlewood Suites.  While a franchise agreement is not identical to the Management Agreement, and not all brands are comparable, it provided the Trustee with a good idea of what it would cost to employ a known alternative

13

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

### 2. Restaurant, Food and Beverage at the Hotel

40.     The Trustee has located and identified a lease, dated December 22, 2015, between the Debtor and BV Grill (the "BV Grill Lease").  The BV Grill Lease provides generally, among other things, the following:

- Property Leased – BV Grill has use of the Hotel and Restaurant and bars for the purpose of providing food and beverages to the Hotel's guests and other patrons.

- Term – 10 years with two options for 5-year extensions commencing February 1, 2015.

- Rent - $900,000 annual rent, with $75,000 payments due monthly.

- Insurance – BV Grill is required to maintain general public liability insurance in standard form in favor of the Debtor and in an amount acceptable to the Debtor.  Proper insurance is also required of any third party operators installed by BV Grill.

41.     BV Grill entered into a contract, dated October 30, 2015 (the "BV Grill Management Contract"), with STK Restaurant Corp., as Manager, and Joseph Smith, as Licensor, who are affiliated with the Bobby Van's steakhouses in and around New York City, to manage the BV Grill.  The Debtor is not a party to that contract.   Interestingly, the BV Grill Management Contract predates the BV Grill Lease by approximately two months even though it specifically references the existence of a BV Grill Lease.  The BV Grill Management Contract further makes reference to the management of a rooftop lounge, which has not been constructed and was not addressed in the BV Grill Lease.

---

to the Manager.  Here, the Management Agreement calls for a Base Fee of 3.5% plus a marketing fee of 1.5% for a total fixed fee of 5.0% of total revenues for the Hotel and Restaurant, plus the Incentive Fee of 20% of only the amount that the Manager is able to do better than what is budgeted.  To the extent that the Incentive Fee can even be calculated and is ever earned, which is doubtful given the Debtor's financial crisis, the Management Agreement calls for payments of only 5.0%, less than one-half of the average franchise and management fees for other Upscale brands.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

42.    The BV Grill Lease was signed by Yanko on behalf of the Debtor, and by his then-spouse, Kerry Wellington, on behalf of BV Grill.  BV Grill is owned and managed by some combination of the Wellingtons, Dean and John Krupa.  BV Grill maintains that the BV Grill Lease is a valid lease although it contests certain aspects of it.

43.    There are numerous issues that exist between the Trustee/Debtor and BV Grill.  To name just a few, the following issues and disputes currently exist: (i) whether BV Grill is not truly separately owned but a subsidiary of the Debtor (an issue raised by Costa based upon alleged prior tax filings); (ii) the validity and enforceability of the BV Grill Lease executed by then-husband and wife sitting on either side of the transaction; (iii) the Trustee's right to reject the Lease even if valid; (iv) the flow of funds between the Debtor and BV Grill by prior management and whether BV Grill owes money to the Debtor or the Debtor owes money to BV Grill[12]; (v) the sharing of expenses between the Debtor and BV Grill and whether either party owes the other money based upon expenses paid by one for the benefit of the other[13]; and (vi) whether BV Grill was provided everything it was supposed to be provided under the Lease if valid[14] (the "Outstanding BV Grill Issues").

44.    Each of Costa, the Manager and BHI immediately raised with the Trustee the issue of BV Grill not paying rent pursuant to the BV Grill Lease or otherwise.  In turn, the Trustee

---

[12]   The books and records that the Trustee has located indicate that BV Grill has never paid rent to the Debtor in accordance with the BV Grill Lease.  However, the accounts of BV Grill and the Debtor were likely comingled and were always managed by common management.  Accordingly, it may require a lengthy investigation and true-up between the entities to the extent it ever becomes necessary.

[13]   The Manager (and necessarily, the Trustee) asserts that the Debtor has paid and continues to pay a number of common expenses, including electricity and other utilities, security, and cable, that should be shared with BV Grill and for which BV Grill has not and does not pay to the Debtor in addition to rent under the BG Grill Lease.  BV Grill asserts that the Debtor has failed to pay for the guest breakfast service provided by it to the Debtor's guests at the Hotel leading to problems with BV Grill's pastry vendor who has gone unpaid.

[14]   BV Grill asserts, among other things, that the BV Grill Lease contemplated that it would be able to do business in a rooftop bar and grill that has not been constructed by the Debtor.  The rooftop bar is not referenced in the BV Grill Lease.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

immediately raised the issue with BV Grill and is working to come to an arrangement by which

BV Grill starts immediately paying for its ongoing enjoyment of rights under the BV Grill Lease

while the parties reserve all other Outstanding BV Grill Issues. If the Trustee cannot reach such a

standstill agreement in the immediate future, he will have no alternative but to move for the

rejection of the BV Grill Lease, to the extent it is even valid, and the removal of BV Grill and its

third-party operator from the premises.

45.     Notwithstanding the validity or invalidity of the BV Grill Lease, the Trustee is

trying to determine in rapid order whether BV Grill provides the most optimal food and beverage

mix for the Hotel, whether any potential investors, plan sponsors or buyers of the Debtor's assets

will want to inherit the relationship with BV Grill or will want the Debtor or its assets free of BV

Grill, and generally whether any relationship with BV Grill should be continued.

### 3.  *Insurance*

46.     The Management Agreement requires the Debtor to maintain adequate insurance

for the protection of the Debtor and Manager and the BV Grill Lease requires the same of BV Grill

and further gives BV Grill the obligation to require its third-party manager to maintain proper

insurance and provide proof of same to the Debtor and Manager. The Debtor and Manager have

had significant difficulty obtaining proof of insurance from the Debtor's prior management and

BV Grill[15] but have identified the existence of the following policies:

| Coverage Type | Insurer or Policy Number | Insured / Additional Insured | Expiration | Policy Limit(s) |
|---|---|---|---|---|
| Commercial General Liability | American Guarantee ******8619 | Debtor Manager Trustee (Requested) | Jan. 16, 2019 | $1 million each occurrence; $3 million general aggregate |
| Automotive Liability | American Guarantee ******8619 | Debtor Manager Trustee (Requested) | Jan. 16, 2019 | $1 million combined |

---

[15]  BV Grill has accused the Debtor and Manager of the same failings.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

| Umbrella | Ace Property ******1001 | Debtor BHI Trustee (Requested) | Jan. 16, 2019 | $125,000,000 each occurrence and aggregate |
|---|---|---|---|---|
| Workers Compensation and Employers' Liab. | Wesco ******3531 | Debtor BHI Trustee (Requested) | Nov. 19, 2018 | $1 million each occurrence and aggregate |
| Property | Liberty Mutual ******6-018 | Debtor BHI Trustee (Requested) | Jan. 16, 2019 | $25 million; $25,000 deductible |
| Crime | Travelers ******6480 | Debtor BHI Trustee (Requested) | Jan. 16, 2019 | $1 million |
| Employment Practices Liability | Hiscox ******90.18 | Debtor BHI Trustee (Requested) | May 2, 2019 | $1 million |
| Excess EPLI | RSUI Indemnity ******6622 | Debtor BHI Trustee (Requested) | May 2, 2019 | $2 million |
| Commercial General Liability | Travelers ******1742 | BV Grill Manager Trustee (Requested) | March 1, 2019 | $1 million each occurrence; $2 million general aggregate |
| Automotive Liability | Travelers ******1742 | BV Grill Manager Trustee (Requested) | March 1, 2019 | $1 million combined |
| Umbrella | Starstone ******W170 | BV Grill Manager Trustee (Requested) | March 1, 2019 | $2 million aggregate and per occurrence |
| Liquor Liability | Illinois Union ******2224 | BV Grill Manager Trustee (Requested) | March 1, 2019 | $1 million |
| Disability Benefits Law | Standard Security ******1607 | BV Grill Manager Trustee (Requested) | Dec. 31, 2018 | Statutory |
| Employment Practices Liability | Hiscox ******90.18 | BV Grill Manager Trustee (Requested) | May 2, 2019 | $1 million |
| Excess EPLI | RSUI Indemnity ******6622 | BV Grill Manager Trustee (Requested) | May 2, 2019 | $2 million |

47.     The Trustee has made provisions to ensure that he is listed as an additional named insured on all of the Debtor's policies, and he is currently investigating and assessing the adequacy of existing coverage.  Further, the Trustee is trying to ascertain which of the foregoing policies are subject to premium financing agreements that must be approved and honored post-petition in order to continue coverage uninterrupted.

17

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

### E.  Factors Leading to the Instant Bankruptcy Case

48.     The reasons for the filing of the Debtor's involuntary bankruptcy case and ultimate

submission and voluntary request by the Debtor for relief under chapter 11 are numerous.  Among

other things, the following factors militated in favor of restructuring pursuant to the Bankruptcy

Code and under the supervision of this Court:

- Maturity of the BHI Loan without extension;

- Nonpayment of vendors and other creditors;

- Inability of Debtor to perform under the Management Agreement;

- Disputes between management and owners (as more fully set forth below); and

- Allegations of impropriety by owners including fraudulent transfers of funds.

49.     Indeed, there is no shortage of good reasons for the Debtor to be in chapter 11.

However, it is the disputes between alleged owners that necessitated the appointment of the

Trustee.

50.     To begin, the Petitioning Creditors accused Costa, who had taken control of the

Debtor and Hotel in or around January 14, 2018, of being a "known fraudster" and to having "(i)

deceived and defrauded the rightful owners of the Hotel and its creditors; (ii) transferred estate

funds to his personal account while failing to pay creditors; (iii) changed the names of entities

without authority in an effort to evade and defraud creditors and interest holders (iv) failed to . . .

. obtain a Certificate of Occupancy for the Hotel . . . . ; and (v) . . .[maintained] close associations

with an individual under indictment for securities fraud."  Trustee Motion, ¶1.

51.     In response, Costa in his declaration dated June 29, 2018 [Docket No. 13] (the

"Costa Declaration"), stated that the involuntary bankruptcy filing "was motivated by an ongoing

interest holder and management dispute," with "parallel lawsuits, criminal complaints, resorts to

surreptitious transfers and closures of bank accounts" (Id. ¶2) and "by Kerry Wellington, Donald

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Wellington, Howard Dean and John Krupa to wrest control over the Debtor's operations" (Id. ¶4).

Costa also established a website at https://wellingtoninvestments.com dedicated to what he claims

to be the fraud perpetrated by prior management. The website has been taken down in the last two

weeks but the Trustee has copied and preserved its prior contents.

52.    Dean has also commenced legal actions with respect to the Debtor's management

and operation of the Hotel in Dean v. NYLO Nyack, LLC, Kerry Wellington, Donald Wellington,

Michael Yanko and John Krupa, Index No. 035388/2017 (N.Y.S. Sup. Ct. Rockland Cty., Nov. 6,

2017), and HD Dev NYLO, LLC v. NYLO Nyack, LLC, Key Real Estate Holdings, LLC

[Holdings], WY Management, LLC, Index No. 033312/2018 (N.Y.S. Sup. Ct. Rockland Cty., June

11, 2018).

53.    In the Wellington Complaint, the Wellingtons alleged that (i) "Costa stole hundreds

of thousands of dollars in equity" by "fraudulently inducing [Donald] Wellington to transfer his

ownership interest" in the Debtor and Bronxville Debtor (Wellington Complaint, ¶1); (ii)

"[Donald] Wellington contributed millions of dollars in equity and loans to [the Debtor and

Bronxville Debtor]" (Id. ¶7); (iii) Costa made "a series of fraudulent misrepresentations about [his]

wealth and business acumen" (Id. ¶8); (iv) Costa "breached his duties of good faith, fair dealing,

and loyalty as the managing member of [the Debtor and Bronxville Debtor], stole physical property

from the [Hotel], and converted project funds for his personal use" (Id. ¶9); and (v) Costa "forged

documents and signatures," and "systematically drain[ed] the bank account of BV Grill" (Id. ¶10).

54.    In the middle of all of the disputes and litigation, Kerry Wellington filed a criminal

complaint against Costa and obtained an order of protection against him on or around June 14,

2018. Upon obtaining the order of protection, Ms. Wellington stayed at the Hotel from around

June 16 to June 26, 2018, and Costa was consequently prevented from entering the Hotel for that

period.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

55.    All of these disputes and conflicts rendered it impossible for the Debtor to function

without the appointment of an independent fiduciary.  There is no question that at the appropriate

time the Trustee will have to conduct a thorough investigation of the Debtor's financial affairs to

determine what really happened to the Debtor and its finances.

56.    Even as of the date of this Declaration, the parties continue their campaign against

one another in the press and elsewhere.  John Krupa maintains a website devoted to information

regarding what he contends to be Costa's fraud (www.therealemc.com).  On August 8, 2018, Costa

sent an email to all of the Debtor's employees asserting his innocence and attempting to prove that

others, including Dean, John Krupa and the Wellingtons, are wrongdoers.  Costa also retained

public relations firm Mercury LLC which is assisting Costa in delivering his message to the

press.[16]

## IV.    INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2

57.    The following is the information required by LBR 1007-2:

- **LBR 1007-2(a)(1)** – The nature of the Debtor's business and a concise statement of the
  circumstances leading to the debtor's filing under chapter 11.  See Section (III)(E),
  supra.

- **LBR 1007-2(a)(2)** – Not applicable. There was no trustee appointed in this case prior
  to the Trustee.

- **LBR 1007-2(a)(3)** – Not applicable. There are no known committees formed prior to
  the Relief Date.

---

[16]  On August 8, 2018, Costa's public relations team sent the following quote to the Journal News (www.lohud.com):
Despite these fraudulent and defamatory actions by unscrupulous actors, I remain committed to the
success of both projects and will be submitting a term sheet to the trustee that will pay off every
creditor in full. I welcome a full investigation of the facts, by law enforcement or the media, but I
know the truth will come out, likely in court, one way or another. They can play all the dirty games
they want, but the truth is on my side and I won't back down." Edgar Costa

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

- **LBR 1007-2(a)(4)** – 20 Largest Unsecured Creditors.  See <u>Exhibit A</u>.

- **LBR 1007-2(a)(5)** – 5 Largest Secured Creditors.  See <u>Exhibit B</u>.

- **LBR 1007-2(a)(6)** – Summary of the Debtor's assets and liabilities.  See Sections (III)(A) and (C) supra.

- **LBR 1007-2(a)(7)** – None of the Debtor's securities are publicly held.

- **LBR 1007-2(a)(8)** – None of the Debtor's property is believed to be in the possession of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, except to the extent that the Trustee is deemed to qualify as any of the foregoing.

- **LBR 1007-2(a)(9)** – The Debtor owns the premises at 400 High Avenue, Nyack, New York 10960 from which it conducts business.  The Trustee conducts business from the offices of KWJS&S, at 200 West 41st Street, 17th Floor, New York, New York 10036-7203.

- **LBR 1007-2(a)(10)** – The Debtor's assets are located at its business premises at 400 High Avenue, Nyack, New York 10960.  The Debtor's books and records, to the extent they have been located at the time of making this Declaration, are located at the premises, with the Manager and at the Trustee's offices.

- **LBR 1007-2(a)(11)** – As discussed above, there are numerous lawsuits by and between the Debtor's various alleged principals, owners and managers.  Other than the litigation by BT Hotel Operating LLC where a judgment was obtained and filed prior to the Petition Date on or around May 11, 2018.

- **LBR 1007-2(a)(12)** – As set forth above, the Debtor's management is the subject of much dispute and all senior management has been taken over and assumed by the

Trustee.  The general manager of the Debtor's Hotel is Anthony Damiano[17] and the controller is Shyam Mehrotra, both of whom are under the supervision of the Manager.

- **LBR 1007-2(b)(1)** – The estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Relief Date is $120,000.

- **LBR 1007-2(b)(2)** – The Debtor does not anticipate paying anything to what properly qualifies as "senior management" for the thirty (30) day period following the Relief Date, but will pay $16,700 to its general manager and controller for that period.  The Debtor does not have any C-level executives or insiders that draw a salary at this time.[18]  The Debtor does anticipate paying the Manager approximately $19,000 for managing the Hotel for the thirty (30) day period following the Relief Date.

- **LBR 1007-2(b)(3)** – Given the timing of filing the Declaration and the Trustee's rapidly coming up to speed, the Trustee respectfully requests that he be excused from providing the financial schedule to be provided pursuant to LBR 1007-2(b)(3).

## V.   INITIAL OR "FIRST DAY" MOTIONS

58.    The Trustee, upon consultation with his proposed professionals, has determined that a number of Initial Motions were required in order to ensure the seamless operation of the Debtor's Hotel and the preservation of value of the Debtor and its estate while the Trustee can determine the most appropriate exist strategy for the Debtor.

---

[17]   The Trustee has reviewed Mr. Damiano's curriculum vitae.  Among other qualifications, Mr. Damiano has over twenty (20) years of experience as a hospitality professional, was the general manager of the Hyatt House in White Plains, New York from September 2010 to November 2017, and has held other senior positions in sales for LodgeWorks, Inc. from July 2004 to August 2010.

[18]   Upon information and belief, Costa claimed entitlement to a salary of approximately $600,000 per year during his tenure from January to July 2018.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

### A. Cash Collateral Motion

59.     As part of its Prepetition Collateral package, BHI has an interest in the Debtor's Cash Collateral.  Prior to the Trustee's appointment, BHI, the Manager and the Debtor had agreed to certain terms for the emergency use of Cash Collateral in order to ensure that the Debtor's operations were not interrupted while the Trustee was appointed and came up to speed.  The Trustee approved and submitted the agreed emergency cash collateral use order by letter to the Court dated August 1, 2018 [Docket No. 38], and it was entered by the Court on August 6, 2018 [Docket No. 39].  The authority to use cash collateral will terminate on August 17, 2018 if not extended by the Court (the "Emergency Period").

60.     BHI has cooperated with the Trustee in the Trustee's efforts to maintain operations during the Emergency Period and will generally agree to the further use of its Cash Collateral for a brief, further interim period.[19]   However, BHI will require as part of any final Cash Collateral use order the establishment of milestones and deadlines for the Trustee's sale of substantially all of the Debtor's assets or filing of a plan, a deadline for asserting any challenges to the extent, validity or priority of its liens, and other routine protections.  Further, as part of any final order, the Trustee will require a Carve-Out on account of certain reasonable administrative expenses, statutory fees of the United States Trustee and "burial" fees in the event the case is converted to chapter 7.

61.     The Trustee has filed a motion (the "Cash Collateral Motion") pursuant to which he requests entry of interim and final orders: (a) authorizing his use of Cash Collateral on a continued interim basis following the Emergency Period, which, subject to the Court's availability

---

[19]   The Trustee has filed a proposed Second Interim Order and proposed Budget in good faith believes that subject to some minor adjustments, they will be acceptable to BHI.  However, BHI has not expressly consented to the Budget or the Second Interim Order at the time the Trustee filed the Cash Collateral Motion.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

for a subsequent hearing, is to be no longer than two to four (2-4) weeks; (b) granting certain adequate protection to BHI in connection with the use of cash collateral and any diminution in the value of the BHI's interest in the Cash Collateral, and (c) prescribing the form and manner of notice and setting the time for the Final Hearing.

62.     The Trustee has determined, in the exercise of his business judgment that he requires the use of Cash Collateral.  The Trustee has an immediate and critical need to use Cash Collateral to pay, in accordance with the proposed budget annexed to the proposed Second Interim Order submitted with the Cash Collateral Motion (the "Budget"), various parties in the ordinary course of business and/or as authorized by the Court.  Among other things, the continued use of Cash Collateral will enable the Trustee to continue to operate the Debtor's Hotel, maintain relationships with the Debtor's vendors and creditors, pay the Debtor's employees, complete certain necessary repairs and improvements needed to maintain compliance with the Department of Buildings and continue and temporary certificate of occupancy for the Hotel, and satisfy other ordinary operational costs that are essential to preserve estate value by continuing to operate the Hotel in the ordinary course.  In the absence of the continued authorization to use Cash Collateral, the Trustee's ability to operate the Hotel will be jeopardized, causing immediate and irreparable harm to the Debtor's estate, creditors, employees, and all other stakeholders by virtue of the loss of significant revenue. Thus, the Trustee's continued use of Cash Collateral is essential in order to enable the Trustee to pay the Debtor's ordinary operating costs and expenses during the pendency of the chapter 11 case.

63.     Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of BHI in the Cash Collateral to the extent of any diminution in value, the Debtor granted BHI as part of the First Interim Order the following adequate Protection:

    i.    Adequate Protection Liens.  Pursuant to sections 361, 363(e) and 364 of the

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Bankruptcy Code, and in consideration of the stipulations and consents set forth in the First Interim ORder, as adequate protection for any postpetition Diminution in Value of BHI's interests in the Prepetition Collateral (including the Cash Collateral), BHI was granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens (the "Adequate Protection Liens"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment, property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests, including equity interests in any subsidiaries and non-wholly owned subsidiaries, money, investment property, and causes of action (including causes of action arising under section 549 of the Bankruptcy Code), and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "Postpetition Collateral"), having the priority set forth in Paragraph 9(b) of the First Interim Order.

ii.   Priority of the Adequate Protection Liens.  Subject to the terms of the First Interim Order, the Adequate Protection Liens shall be junior only to the: (A) the Prepetition Liens, and (B) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral (including any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code).  Subject to the terms of this Second Interim Order, the Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, any subsequently appointed trustee under either Chapter 7 or 11 and any successors thereto.

iii.   Superpriority Claim.  Subject to the terms of this Second Interim Order, as further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, BHI was granted an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in the Case to the extent of any postpetition Diminution in Value (the "Superpriority Claim").

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

iv.  <u>Priority of the Superpriority Claim</u>.  The Superpriority Claim will not be junior to any claims.

The Adequate Protection Liens shall be senior to any other liens, including, without limitation, any other adequate protection replacement liens.  The Adequate Protection Liens shall not be secured by any avoidance actions under Chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>").

64.   The Trustee does not propose making any adequate protection payments at this juncture but may request to do so in the future or as part of any Final Order to the extent the Debtor and its estate have sufficient resources.

65.   The Trustee respectfully requests that the Court implement a "<u>Carve-Out</u>" from the Adequate Protection Liens as part of any Final Order.  The Trustee proposes that the "Carve-Out" include (i) the quarterly fees and interest thereon required to be paid pursuant to 28 U.S.C. §1930(a)(6); (ii) any fees payable to the Clerk of the Court; (iii) all reasonable fees and expenses incurred by any trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000; (iv) the accrued and unpaid fees and expenses incurred by the professionals retained by the Trustee or any creditors' committee (a "<u>Creditors' Committee</u>"), up to the amounts provided for in the Budget; <u>provided</u>, <u>however</u>, that with respect to the foregoing clause (iv), such fees and expenses (A) will only be paid to the extent allowed by the Court; and (B) will be subject to the rights of BHI and any other party in interest to object to the allowance thereof.

66.   I have reviewed the Cash Collateral Motion and believe the facts stated therein are accurate to the best of my knowledge, information and belief. I further believe that the relief requested in the Cash Collateral Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest, and will enable the Debtor to continue to operate its business in chapter 11 without disruption.  Accordingly, I respectfully submit that the Cash Collateral Motion should be granted.

### B.   Authority to Continue to Operate Pursuant to Management Agreement

67.     The Trustee has filed a motion (the "Management Motion") pursuant to which he requests entry of interim and final orders authorizing the Trustee to continue to operate the Hotel by and through the Manager pursuant to the Management Agreement, without assumption or rejection thereof.  As stated above, the Manager has operated the Hotel since it was opened in 2016 and supervised its construction prior to that point.  In fact, the name of the Hotel is the property of the Manager or its affiliate which the Debtor licenses pursuant to the Management Agreement.

68.     The Trustee has no viable alternative to operating the Hotel other than with the Manager pursuant to the Management Agreement.  All fees and entitlements that the Manager is entitled to under the Management Agreement appear to be standard to the industry and reasonable under the circumstances.  Further, the Manager is willing to continue to perform under the Management Agreement without any agreement on addressing the management fees that it is owed for managing the Hotel over the last two years.

69.     The Management Motion also contemplates approval of the current cash management system of the Trustee pursuant to which both the Manager and Trustee must approve, by signature, payment by check or transfer of any of the Debtor's funds in the Operating Accounts.

70.     For all the reasons set forth in detail in the Management Motion, the Trustee believes that authority to operate under the Management Agreement is necessary to continue the operation of the Hotel and maintain the value of the Debtor and its estate for the benefit of creditors and other stakeholders.  Accordingly, the Trustee respectfully requests that the Management Motion be approved.

### C.  Employee Wage Motion

71.     The Trustee has also filed a motion (the "Employee Wage Motion"), wherein he seeks entry of an order (a) authorizing, but not requiring, him to pay or cause to be paid, in his sole

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

discretion, all or a portion of the amounts owing (and associated costs) under or related to Wages, the Withholding Obligations, the Reimbursable Expenses, the Health Plan Obligations (all capitalized terms as defined in the Employee Wage Motion) in accordance with the terms of the Budget, and (b) authorizing applicable banks and other financial institutions to receive, process, and pay any and all checks drawn on the Debtor's payroll and general disbursement accounts and automatic payroll and other transfers to the extent that those checks or transfers relate to any of the foregoing.

72.    The Debtor currently has 48 employees (collectively, the "Employees").  The Debtor uses a weekly pay period, which runs from Sunday to Saturday.  The Debtor pays its employees on Friday for the preceding Sunday to Saturday pay period.  The average weekly total of the Debtor's payroll is approximately $30,000.

73.    It appears that all standard payroll accrued prior to the Relief Date for July 16 to July 19, 2018 was already paid with the payroll cycle on July 27, 2018 without the Trustee's knowledge which totaled approximately $26,084 (the "Pre-Relief Date Wages").  Had the Debtor not made the unauthorized payment of Pre-Relief Date Wages, the Trustee would be seeking authority to make the same payment in the Employee Wage Motion because it was absolutely necessary to the preservation of the Debtor's business, but instead, the Trustee is seeking retroactive approval of the payments the Pre-Relief Date Wages already made, *nunc pro tunc* to July 20, 2018. The Trustee also seeks approval to pay Employees $2,525 on account of Reimbursable Expenses incurred in the ordinary course of business prior to the Relief Date.  The aggregate amount to be paid in accordance with the Employee Wage Motion is $28,609 plus a de minimis amount for medical benefits for the two employees that receive them.  No single employee was or will be paid more than the $12,850 priority cap in section 507(a)(4) of the Bankruptcy

28

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Code.  Further, because those Wages were accrued during the "gap" period, the should be entitled

to a section 507(a)(3) priority not subject to the section 507(a)(4) cap.

74.     Upon the culmination of each payroll cycle, certain amounts are deducted from each

of the Employees' paychecks to account for (i) federal, state and local tax withholdings laws and

(ii) pre- and after-tax deductions pursuant to employee benefit plans (described below under

"Employee Benefits").

75.     The Debtor is required by law to withhold from the Employees' wages amounts

related to federal and state taxes, social security and Medicare taxes (collectively, the "Trust Fund

Taxes"), and to remit the Trust Fund Taxes to the appropriate taxing authorities (collectively, the

"Taxing Authorities").  Additionally, the Debtor is obligated to match from its own funds the social

security and Medicare taxes and to remit to the Taxing Authorities, based on a percentage of gross

payroll, additional amounts for state and federal unemployment insurance (collectively, the

"Employer Payroll Taxes" and, together with the Trust Fund Taxes, the "Payroll Taxes").  The

Payroll Taxes on average total approximately $11,600 per pay period.   Upon information and

belief, the Debtor is current on its pre-Relief Date Payroll Taxes obligations, but the amounts paid

on July 27, 2018 for the period from July 17, 2018 through July 20, 2018 constitute unauthorized

post-Relief Date transfers (the "Pre-Relief Date Payroll Taxes").  The Trustee seeks retroactive

approval of the Debtor's payment of the Pre-Relief Date Payroll Taxes, *nunc pro tunc* to July 20,

2018.

76.     Pursuant to the Management Agreement, the Debtor adopts and must use the

Manager's employee policies and procedures with respect to its employees.  Those policies and

procedures provide for the accrual and use of certain sick days, vacation days and other benefits.

The Trustee proposes to keep those policies in place, uninterrupted.  Given the relatively short

time that the Debtor has been operating, the Trustee does not believe that any single Employee has

significant accrued sick days or vacation days that would amount in value to more than the $12,850

priority cap in section 507(a)(4) of the Bankruptcy Code.

77.     If the relief requested in the Employee Wage Motion is not granted, the Debtor's

relationship with its Employees as well as the Manager's ability to operate the Hotel would be

adversely impacted and there could well be irreparable harm to the Employees' morale, dedication,

confidence, and cooperation at a time when the Trustee's and Manager's ability to rely on the

Debtor's employees to assist in achieving the Trustee's goal of preserving value until an

appropriate exit strategy can be implemented is of the utmost importance.  The vast majority of

the Debtor's employees are hourly wage earners who rely upon their paycheck each week to pay

their living expenses.  If employees do not have confidence that they will be paid in the ordinary

course of business, they will seek employment elsewhere.  At this early stage, the Trustee simply

cannot risk the substantial damage to the Debtor's business that would result from the loss of its

Employees.

78.     I believe that the relief requested in the Employee Wage Motion is in the best

interests of the Debtor's estate, the Debtor's creditors, and all other parties in interest and

constitutes a critical element in achieving a successful and smooth transition into a Trustee-

controlled Debtor operating in this chapter 11 case.  Accordingly, I respectfully submit that the

Employee Wage Motion should be approved.

### D.  Critical Vendor Motion

79.     The Trustee has also filed a motion (the "Critical Vendor Motion"), wherein he

seeks entry of an order authorizing, but not requiring, him to pay or cause to be paid, in his sole

discretion, certain claims that accrued prior to the Relief Date held by certain critical vendors (the

"Critical Vendors").

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

80.      Upon consultation with the Manager, the Trustee believes that the flow of certain vital goods and services to the Debtor will be interrupted if he cannot pay Critical Vendors.  The Trustee and the Manager are still engaged in discussions regarding which vendors qualify as Critical Vendors, but at this time, the Trustee seeks authority to pay certain Critical Vendors as part of an interim order approximately $31,700.00.  The proposed potential payments include: (i) $8,200 to the Debtor's carting company which requires payment and will be extraordinarily expensive and difficult to replace; (ii) $11,100 to Duetto Research Inc., which is a reservation channel system that the Debtor requires to book guests; (iii) $1,161.70 to Protravel International LLC for commissions due from Debtor's largest corporate account that it cannot afford to lose; (iv) $6,493.43 to Tri State Linen Inc., the Debtor's linens vendor, which has threatened to cease delivery and would be prohibitively expensive and disruptive to replace; and (v) $2,057 to Triptease Inc., which provides a direct booking platform for designer hotels that drives a number of the Debtor's guests. While the amount is not substantial to the Debtor's estate, it is necessary to pay for practical concerns over whether it would be prohibitively expensive to replace the Critical Vendors (in the case of the carting and linen companies) or even whether the Critical Vendors can even be replaced at all (in the case of the booking services).

81.      The authority to satisfy the Critical Vendors' claims (the "Critical Vendors Claims") in the initial days of the Trustee's appointment without disrupting business operations will send a clear signal to the marketplace that the Trustee is willing and, importantly, able to conduct the Debtor's business as usual during the pendency of its bankruptcy case, which will aid the Trustee in preserving the value of the Debtor's estate.

82.      Failure to pay the Critical Vendor Claims could materially jeopardize the continued operations of the Hotel.  If the Critical Vendors are unwilling to continue doing business with the Debtor post-petition due to unpaid prepetition claims, business operations will suffer,

31

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

compromising the value of the estate, to the detriment of all parties-in-interest.  Even if the Trustee were able to replace the Critical Vendors, it is unlikely that the new providers would be able or willing to provide services in a timely manner or on terms as favorable as those currently available.

83.     I believe that the relief requested in the Critical Vendor Motion is in the best interests of the Debtor's estate, the Debtor's creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition into a Trustee-controlled Debtor operating in this chapter 11 case.  Accordingly, I respectfully submit that the Critical Vendor Motion should be approved.

### E.  Professional Retentions

84.     The Trustee has determined that he must hire general counsel and financial advisors to assist him in the administration of his duties and has employed KWJS&S and CBIZ, respectively, subject to the approval of this Court.  Both firms have already done a tremendous amount of work in the first two and one-half weeks since the Trustee's appointment to get the Trustee to the point he is at now.

### 1.  KWJS&S

85.     The Trustee selected KWJS&S as his general counsel because KWJS&S has extensive experience and knowledge in the fields of debtors' and creditors' rights, general corporate law, debt restructuring, investigations, corporate reorganizations, and litigation, among others.  Further, KWJS&S has significant experience in representing trustees and other interested parties in cases analogous or otherwise relevant to the Debtor's case in many ways.

86.     KWJS&S also has specific experience directly relevant to the Debtor's case. KWJS&S represented the debtors Alex Hotel and Flatotel, 203-room and 290-room hotels in New York City, respectively, with related restaurants, in a successful restructuring before this Court (see *In re 205 East 45 LLC, et al.*, Case No. 12-12208 (ALG)), and currently represents the debtors

in *In re 1141 Realty Owner LLC, et al.* (see Case No. 18-12341 (SMB)) in connection with the chapter 11 case of the Flatiron Hotel at 9 West 26th Street, New York, New York.

87.     Accordingly, the Trustee believes that KWJS&S is well qualified to represent him as his general counsel in this case.

## 2. CBIZ

88.     The Trustee requires the services of a financial advisor in connection with the: (i) preparation of monthly operating reports, statement of financial affairs, statement of assets and liabilities, and other schedules, as required by the local rules of the Court, and the United States Trustee's guidelines; (ii) preparation of a cash flow budget, cash management and distribution of funds; (iii) performing an investigation and analyses of potential claims and recoveries, including analyzing transactions with vendors, insiders, former management, and related and/or affiliated companies, both subsequent and prior to the commencement of the Debtor's bankruptcy case; (iv) providing litigation support to the Trustee in connection with litigation that might be commenced by him to avoid and recover assets of the estate or pursue claims; (v) liquidation or sale of the Debtor's business and assets; (vi) management of the Hotel pursuant to the Management Agreement and related contracts; (vii) preparation of Federal, State, and Local tax returns and requisite disclosures on behalf of the Trustee and the Debtor's estate; (viii) reconciliation of filed proofs of claim and claims against the Debtor's estate; (ix) preparation of plans of reorganization or liquidation of assets; (x) preserving and maximizing the value of the assets of the Debtor's estate.

89.     CBIZ had previously interviewed with and been selected by the Debtor as its financial advisor.  However, the Debtor never formally retained CBIZ.  Accordingly, CBIZ has familiarity with the Debtor and its operations, but has no conflict or reason that it cannot serve as the Trustee's financial advisor in this case.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

90.    Accordingly, the Trustee believes that CBIZ is well qualified to represent him as his financial advisor in this case and respectfully requests approval of the retention.

### F. Utilities Motion

91.    The Debtor has two primary providers of utilities ("<u>Utility Providers</u>") that the Trustee is currently aware of: (i) Orange and Rockland, Utilities, Inc., a ConEdison, inc. company ("<u>O&R</u>"), which provide electricity to the Hotel; and (ii) the Village of Nyack, which supplies water to the Hotel.  The Trustee has learned that the Debtor did not pay for electricity use for at least four months prior to the July 20, 2018 relief date and O&R has already sent a written demand for a deposit of $54,230, roughly two months of usage.  O&R demanded the deposit by no later than August 9, 2018, but has agreed to not take any further action pending the hearing on the Trustee's motion with respect to Utility Providers (the "<u>Utilities Motion</u>") and the Cash Collateral Motion when the required deposit could be considered in the Budget.

92.    Should any utility company refuse or discontinue service, even for a brief period, the Debtor's business operations could be severely disrupted.  It is therefore critical that utility services continue uninterrupted.

93.    By the Utilities Motion, the Trustee requests entry of an order, which (i) prohibits the Debtor's utility providers from altering, refusing or discontinuing utility services on account of any prepetition amounts owed and outstanding for any utility services rendered, on account of the Debtor's bankruptcy filing or because of any perceived inadequacy of the Debtor's proposed adequate assurance; (ii) determining that the utility providers have received adequate assurance of payment for future utility services; (iii) approving procedures whereby the utility providers may request additional or different assurances beyond that proposed in the Utilities Motion; and (iv) determining that the Debtor is not required to provide any additional assurance beyond the assurance set forth in the Utilities Motion.

34

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

94.     The Debtor typically pays approximately $30,000 per month on account of utility services, and the Trustee intends to pay all post-petition obligations owed to the Debtor's utility companies in a timely manner in accordance with the terms of the Budget.

95.     In addition, the Trustee proposes to provide to any utility provider not currently holding a deposit a cash deposit in an amount equal to the average cost of one (1) month of utility service from that utility provider, calculated as an historical average over the past twelve (12) months, or such other amount as is properly requests like in the case of O&R.

96.     In the event that any utility provider who is holding a deposit as of the Petition Date, but that believes it is not adequately assured of future payment based on such existing deposit, such utility provider may make a deposit request, provided that (a) such request is made in writing no later than the request deadline; (b) such requesting utility provider does not already hold a deposit that is equal to or greater than the proposed adequate assurance deposit; and (c) such requesting Utility Provider is not currently paid in advance for its utility services.  The Trustee will issue a check for the balance between any then current deposit and the adequate assurance deposit if a timely deposit request is made.

97.     The Trustee submits that the adequate insurance deposit, together with the estate's ability to pay for future utility services in the ordinary course of business, constitutes sufficient adequate assurance to the utility providers.

98.     As further detailed in the Utilities Motion, the relief requested pursuant to the motion is necessary, fair to the utility providers, and in the best interests of the Debtor, its estate and its creditors.

## G.  Tax Motion

99.     In the ordinary course of its business, the Debtor incurs various tax liabilities, including, among others, federal, state, and local income, sales, franchise, corporate, occupancy

35

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

and excise taxes (collectively, the "Taxes"), including in the case of sales taxes, the obligation to

collect those taxes from customers and turn them over to the proper authority.  Prior to the Relief

Date, the Debtor had historically paid or remitted such Taxes to various taxing, licensing, and other

governmental authorities (collectively, the "Authorities") as they became due.  However, as of the

Relief Date, the Debtor had not paid or remitted such Taxes for June or July 2018 totaling

approximately $75,053.00.

100.    The Trustee filed a motion (the "Tax Motion") seeking an order (a) authorizing but

not directing the Trustee to pay certain accrued and outstanding prepetition income, sales,

franchise, corporate, excise and other taxes and governmental charges as the Trustee deem

necessary, (b) authorizing banks and other financial institutions to honor and process all checks

and wire transfers related to the payment of such prepetition taxes and governmental charges, and

(c) granting related relief.

101.    As set forth in the Tax Motion, the Trustee must pay the Taxes, most of which are

at least arguably held in trust for the appropriate Authorities and not property of the Debtor at all.

The failure to pay those Taxes will result in the continued accrual of penalties and interest.

## VI.    CONCLUSION

102.    The Trustee reserves the right to amend or supplement this Declaration and any of

the information contained herein.  As set forth above, the Trustee has held his post for just a little

more than two (2) weeks, and accordingly, while he believes that all of information contained in

this Declaration is true based upon his knowledge, information and belief formed after an inquiry

reasonable under the circumstances, the information may change based upon further investigation

by the Trustee.

In re: EMC Hotels and Resorts, LLC, Debtor; Case No. 18-22932 (RDD)
Declaration of Fred Stevens, Chapter 11 Trustee, Dated August 10, 2018

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information and belief.

Dated:   New York, New York
         August 10, 2018

                                              _____
                                              Fred Stevens

**<u>Exhibit A</u>**

**<u>20 Largest Unsecured Creditors</u>**

Fill in this information to identify the case:

| | |
|---|---|
| Debtor name | **EMC Hotels and Resorts, LLC** |
| United States Bankruptcy Court for the: | **SOUTHERN DISTRICT OF NEW YORK** |
| Case number (if known): | **18-22932** |

■ Check if this is an

amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **ZSC NYLO Fund LLC c/o Duval & Stachenfeld LLP 555 Madison Avenue; 6th Floor New York, NY 10022** | **Kirk Brett kbrett@dsllp.com (212) 692-5525** | **EB-5 Finance** | | | | **$8,000,000.00** |
| **BCG Ritz Trump, LLC Moritt Hock & Hamroff LLP 400 Garden City Plaza Garden City, NY 11530** | **Marc L. Hamroff mhamroff@moritt hock.com (516) 880-7231** | | **Contingent Unliquidated Disputed** | | | **$6,500,000.00** |
| **BT Hotel Operating LLC c/oSkadden, Arps, Slate, Meagher & Flom Four Times Square New York, NY 10036** | **Jonathan Frank jonathan.frank@sk adden.com (212) 735-3386** | **Judgment for breach of contract** | | | | **$5,926,934.54** |
| **Dream Hotel Group, LLC 200 West 55th Street Suite 42 New York, NY 10019** | **Laura Mutterperl lmutterperl@dream hotelgroup.com (212) 474-9800** | **Trade** | | | | **$515,811.39** |
| **Belfor 75 Virginia Road White Plains, NY 10603** | **c/o Robinowitz Cohlan Dubow & Doherty Alan M. Dubow 914-949-2826** | **Trade** | | | | **$184,433.80** |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **EMC Hotels and Resorts, LLC** | | Case number *(if known)* | **18-22932** |
|---|---|---|---|---|
| | Name | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Orange & Rockland County Light & Power** PO Box 1005 Spring Valley, NY 10977 | **Jennifer Woehrle** 845-577-3670 | **Utilities** | | | | $85,975.16 |
| **TravelClick, Inc.** 300 N. Martingale Road Suite 650 Schaumburg, IL 60173 | **Mary Sullivan** msullivan@travelcl ick.com (845) 575-5000 | **Trade** | | | | $51,644.82 |
| **Sentinel Management Group, Inc.** 96-59 222nd Street Suite 200 Queens Village, NY 11429 | **Robert J Buser** Bobbuser@sentine lmgi.com (718) 740-3600 | **Trade** | | | | $32,775.86 |
| **Sabre Hospitality Solutions** 3150 Sabre Drive Southlake, TX 76092 | **Jason Sutton** jason.sutton@sabr e.com 682-605-5876 | **Trade** | | | | $32,767.15 |
| **Trane U.S. Inc.** 19 Chapin Road Suite 200 Pine Brook, NJ 07058 | **Anna Balkonis** anna.kortier@trane .com 608 787 4330 | **Trade** | **Disputed** | | | $32,259.76 |
| **Amtrust North America** 5800 Lombardo Ctr. Cleveland, OH 44131 | **Jordan Kokkoris** jordan@kokkorisin s.com (877) 528-7878 | **Insurance** | | | | $26,959.00 |
| **All Phase Electric Enterprises, Inc.** 75A Lake Road Suite 179 Congers, NY 10920 | **Paul White** (845) 267-2339 | **Trade** | | | | $18,060.81 |
| **Chandelier - New York** 611 Broadway - Penthouse New York, NY 10012 | concierge@chande liercreative.com (212) 620-5252 | **Trade** | | | | $17,500.00 |
| **Elite Moving & Storage** PO Box 384 New York, NY 10027 | **Vince Marin** vincemarin30@gm ail.com (718) 401-7100 | **Trade** | | | | $16,255.08 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                Best Case Bankruptcy

| Debtor | **EMC Hotels and Resorts, LLC** | | Case number *(if known)* | **18-22932** |
| | Name | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Permac Restoration Inc.** **97 Maple Place Yonkers, NY 10704** | **Lukasz Oleszczak** **Permacrestoration @gmail.com (917) 225-2556** | **Trade** | | | | **$15,500.00** |
| **Cvent Inc.** **1765 Greensboro Station Place 7th Floor Tysons Corner, VA 22102** | **Ashley Chiu** **ACHIU@CVENT.CO M (866) 936-7561** | **Trade** | | | | **$15,322.34** |
| **Heather Grabin** **38 Independence Way Jersey City, NJ 07305** | **heather@splashpu blicrelations.com (917) 375-9918** | **Trade** | **Disputed** | | | **$14,000.00** |
| **Welby, Brady & Greenblatt, LLP** **11 Maritime Avenue 15th Floor White Plains, NY 10606** | **Anthony P. Carlucci Jr** **acarlucci@wbgllp. com (914) 428-2100** | **Attorney fees** | **Disputed** | | | **$13,436.47** |
| **Express Lighting** **245 48th Street, #2 Brooklyn, NY 11220** | **Abe Hammerman** **abe@expressivelig hting.com (718) 972-1405** | **Trade** | | | | **$12,500.00** |
| **Best Landscape & Maintenance** **PO Box 32 Blauvelt, NY 10913** | **Dean Dellolio/Sue Hubschman** **bestlandscape@g mail.com (845) 398-2181** | **Trade** | | | | **$11,770.58** |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

## Exhibit B

## 5 Largest Secured Creditors

| Name and Address of Creditor | Approximate Indebtedness or Potential Indebtedness | Collateral and Value | Known Disputes if any |
|---|---|---|---|
| Rockland County Dept. of Finance 50 Sanatorium Road Building A, 8th Floor Pomona, NY 10970<br><br>Charlotte Madigan Town Clerk Town of Orangetown Taxes 26 W. Orangeburg Rd. Orangeburg, NY 10962 | Not less than $362,286.04 | First priority lien on all real property | Claim is subject to verification but not subject to any known disputes |
| Bank Hapoalim B.M. 1177 Avenue of the Americas New York, New York 10036 Attn: David Fishler<br><br>Jared R. Clark Marc A. Landis Phillips Nizer LLP 485 Lexington Avenue, 14th Floor New York, New York 10017 | $18,700,000.00 | Generally all real estate, personal and intangible property of Debtor | Claim is subject to verification but not subject to any known disputes |
| Nyack Hotel Fund LLC c/o Zou Singer Capital LLC 555 Fifth Avenue, 6th Floor New York, New York 10017<br><br>Kirk L. Brett Duval & Stachenfeld LLP 555 Madison Avenue, 6th Floor New York, New York 10022 | $2,414,152.78 | Real property | Claim is subject to verification but not subject to any known disputes |
| BT Hotel Operating LLC c/o Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, New York 10036-6522 Attn: Jonathan Frank     Mark A. McDermott     Jeffrey Geier | $5,926,934.54 | Real Property by Judge Lien | Judgment filed on or around May 11, 2018 and to the extent valid, is believed to be avoidable pursuant to 11 U.S.C. §547 |