| | |
|---|---|
| **KLESTADT WINTERS JURELLER** | Hearing Date: October 26, 2018 |
| **SOUTHARD & STEVENS, LLP** | Hearing Time: 10:00 A.M. (ET) |
| 200 West 41st Street, 17th Floor | |
| New York, New York 10036 | Objection Deadline: October 19, 2018 |
| Telephone: (212) 972-3000 | @5:00 p.m. (ET) |
| Facsimile: (212) 972-2245 | |
| Tracy L. Klestadt | |
| Fred Stevens | |
| Brendan M. Scott | |

*Counsel to Fred Stevens, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :  Chapter 11
EMC HOTELS AND RESORTS, LLC,                                      :
                                                                  :  Case No. 18-22932 (RDD)
                                             Debtor.              :
------------------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105, 363(b)(1) AND 503(c)(3) OF THE BANKRUPTCY CODE AUTHORIZING (I) IMPLEMENTATION OF A KEY EMPLOYEE RETENTION PLAN FOR CERTAIN NON-INSIDERS AND (II) PAYMENT OF ANY OBLIGATIONS <u>ARISING THEREUNDER AS ADMINISTRATIVE EXPENSES</u>**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Fred Stevens, chapter 11 Trustee (the "<u>Trustee</u>") of EMC Hotels and Resorts, LLC, the above captioned debtor (the "<u>Debtor</u>")[1], by and through his undersigned counsel, hereby moves for entry of an order in pursuant to sections 363(b)(1) and 503(c)(3) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), authorizing (i) implementation of a key employee retention plan for certain non-insiders ("<u>Key Employee Retention Plan</u>" or "<u>KERP</u>"), and (ii) payment of any obligations arising thereunder as administrative expenses (the "<u>Motion</u>"). In

---
[1] The last four digits of the Debtor's Federal Employer Identification Number are 0530.

support of the Motion, the Trustee relies upon and incorporate by reference the Declaration of Fred Stevens (the "Stevens Declaration"), which is being filed concurrently herewith. In further support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor owns The Time Nyack Hotel, a 133-room hotel in Nyack, New York (the "Hotel") and manages the Hotel through a third-party manager affiliated with the Dream Hotel Group, HHM Nyack, LLC (the "Manager"). Among the Manager's duties is the duty to recruit, hire, promote, discipline, discharge, supervise, direct, train, transfer and determine the terms of employment of the Debtor's employees involved in the operation of the Hotel. The Debtor's General Manager, Anthony Damiano, was hired by the Manager. Mr. Damiano is tasked with supervising day-to-day operations at the Hotel. After conferring with the Manager, the Trustee has determined that Mr. Damiano is a highly valuable employee with invaluable insight and know-how regarding the operation of the Hotel. He could not easily be replaced, and the loss of his know-how would be a detriment to the Trustee's efforts to stabilize the Hotel and reorganize the Debtor's business. Most significantly, recruiting a replacement for Mr. Damiano would be extraordinarily difficult and expensive given that the Debtor is in bankruptcy and it is entirely uncertain what any future owner of the Hotel could want to do with the Debtor's general manager.

Further, given the uncertainty surrounding the Hotel's future, there is a significant risk that Mr. Damiano could seek other employment in order to ensure continued future employment without the uncertainties regarding continued operations and the potential that he could be let go if there is a change in ownership or control of the Hotel. In order to ensure that Mr. Damiano does not seek other employment during this tumultuous period, the Trustee has determined to

provide Mr. Damiano with: (I) a bonus in the amount of $31,250, which is equal to approximately 25% his base compensation, to be earned on the sooner of (a) the effective date of any plan of liquidation or reorganization, (b) closing on a sale of the Hotel or (c) December 31, 2018, and to be paid as soon as is practicable thereafter, provided that Mr. Damiano is employed by the Debtor at the time the bonus is earned and is performing his duties in accordance with the terms of his employment agreement with the Debtor (the "Annual Bonus"); and (II) an additional bonus in the amount of $20,000 to be earned on the sooner of the effective date of any plan of liquidation or reorganization or closing on a sale of the Hotel assets regardless of the date of the occurrence of such event, and paid as soon as is practicable thereafter, provided that Mr. Damiano is employed by the Debtor at the time the bonus is earned and is performing his duties in accordance with the terms of his employment agreement with the Debtor (the "Transaction Bonus"). The Annual Bonus is consistent with Mr. Damiano's pre-petition compensation package except that it could theoretically be paid prior to year-end if a transaction occurred prior that time. The Transaction Bonus is an additional bonus intended to incentivize Mr. Damiano to stay on through any transaction.

As discussed in more detail below, the Trustee does not believe that Mr. Damiano is an "insider" because he is not an owner or director, and although his title is "General Manager," Mr. Damiano does not have management or decision-making authority akin to an executive. Nor does he have check signing authority or any ability to dictate overall company policy. All executive decisions must be, have always been and are made by the Manager and Trustee or Debtor's prior executives. As such, the Court should analyze the propriety of the proposed retention plan under Bankruptcy Code section 503(c)(3). The appropriate standard of review is essentially the same as the business judgment standard. As discussed in more detail below, the

Trustee believes the proposed retention plan should be approved because (i) there is a reasonable relationship between the plan proposed and the results to be obtained, because Mr. Damiano will be required to stay for as long as it takes for the Trustee to reorganize the Debtor and/or market and sell the Hotel, (ii) the cost of the plan is reasonable in the context of the Debtor's assets, liabilities and earning potential, (iii) the scope of the plan is fair and reasonable as it is limited to Mr. Damiano, and (iv) the plan or proposal is not inconsistent with industry standards.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1. This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this proceeding and this Cash Collateral Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief requested herein is sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b), 4001(d) and 9014.

## BACKGROUND

### A. The Bankruptcy Case

5. On June 18, 2018 (the "Petition Date"), Evolve Controls, CJB Asset Management Group LLC, and Consolidated Companies Inc. d/b/a Best Landscape (collectively, the "Petitioning Creditors") filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against the Debtor.

6. On June 29, 2018, the Petitioning Creditors filed a Motion for the Appointment of an Interim Trustee (the "Trustee Motion") [Docket No. 12], and the Debtor filed a motion to dismiss the involuntary petition and for abstention (the "Dismissal Motion") [Docket No. 13].

7. On July 15, 2018, the Debtor filed a Motion to convert the Debtor's involuntary chapter 7 case to a voluntary chapter 11 case [Docket No. 27], which rendered the Dismissal Motion moot. The Motion was granted by Order dated July 20, 2018 (the "Conversion Date") [Docket No. 30].

8. On July 20, 2018 (the "Relief Date"), this Court entered orders: (i) converting the Debtor's involuntary chapter 7 case to a voluntary chapter 11 case [Docket No. 31]; and (ii) granting the Trustee Motion and directing the United States Trustee to appoint a chapter 11 trustee [Docket No. 30].

9. On July 25, 2018, the United States Trustee appointed the Trustee as the chapter 11 trustee of the Debtor [Docket No. 32], and the Court entered an order approving my appointment [Docket No. 34]. On the same date, the Trustee employed KWJS&S to serve as his general counsel and CBIZ to serve as the Trustee's financial advisors in the Debtor's case, subject to the approval of this Court.

10. On August 6, 2018, the Court entered an order for relief in the Debtor's case *nunc pro tunc* to the July 20, 2018 Relief Date [Docket No. 40].

### B. The Debtors' Business

11. According to certain parties, the concept for constructing the Hotel was conceived in or around 2012 by Michael Yanko ("Yanko") and Howard Dean ("Dean"). Trustee Motion, ¶4.

12. The Debtor is a limited liability company formed under the laws of the State of New York on or around January 10, 2014. The Debtor's name has changed at least twice from NYLO Nyack LLC to WY Time Hotel, LLC (the "WY" standing for Wellington-Yanko) on July 14, 2015 and then to its current name, EMC Hotels and Resorts LLC (the "EMC" standing for Edgar M. Costa), on March 19, 2018. The Debtor was formed for the purpose of acquiring property at 400 High Avenue, Nyack, New York and developing the Hotel. Trustee Motion, ¶4.

13. EMC Real Estate Holdings, LLC, f/k/a Key Real Estate Holdings, LLC ("Holdings") is a limited liability company formed under the laws of the State of New York on or around April 22, 2014. Holdings became the majority owner of the Debtor and was or is owned by some combination of Donald F. Wellington and Kerry P. Wellington (collectively, the "Wellingtons"), Yanko and Edgar M. Costa ("Costa"). However, Holdings' ownership interest in the Debtor was pledged to certain creditors as more fully set forth below. The current ownership of Holdings, or the manner by which current ownership was obtained, is very much in dispute. See e.g., Donald F. Wellington and Kerry P. Wellington v. Edgar Melo Costa, Index No. 155822/2018 (N.Y.S. Sup. Ct. Jul. 19, 2019), Complaint at Docket No. 2 (the "Wellington Complaint"). The minority interest in the Debtor is owned by HD DEV NYLO, LLC, a New York limited liability company which was formed on or around April 28, 2014 by Dean.

14. The construction of the Hotel was financed primarily with borrowed funds and the Hotel was opened for business in or around May 2016

**C.    Development of and Necessity for the Proposed Plan.**

15. The Trustee and his advisors have engaged in discussions with several parties, including but not limited to the Manager and Mr. Damiano regarding the Debtor's bankruptcy case in general, including potential exit strategies. At the urging of the Debtor's secured

6

prepetition lender, the Trustee has determined to market the Hotel for sale or for a plan sponsor. The Manager recommended to the Trustee that Mr. Damiano be kept on as the General Manager during the duration of the case based on his past performance and has indicated to the Trustee that the loss of Mr. Damiano would have a destabilizing effect on the operation of the Hotel. The Trustee believes it important to keep Mr. Damiano on as the General Manager in order to maintain stability as he attempts to market the Hotel to potential buyers and investors.

16.     In short, Mr. Damiano is critical to preserving and maximizing value while the bankruptcy case is pending.

### RELIEF REQUESTED

17.     By this Motion, the Trustee seeks entry of an order under Bankruptcy Code section 503(c)(3) and, to the extent applicable, section 363(b)(1) of the Bankruptcy Code, authorizing (i) implementation of the KERP, and (ii) payment of any obligations arising thereunder as administrative expenses.

### BASIS FOR RELIEF REQUESTED

18.     Key employee plans outside of the ordinary course are not governed by Bankruptcy Code section 363 must be analyzed under Bankruptcy Code section 503(c). See In re Borders Group, Inc., 453 B.R. 459, 470-71 (Bankr. S.D.N.Y. 2011); In re Mesa Air Group, Case No. 10-10018 (MG), 2010 WL 3810899 (Bankr. S.D.N.Y. Sept. 24, 2010).

19.     Section 503(c)(1) of the Bankruptcy Code restricts payments made to "insiders of the debtor for the purpose of inducing such person to remain with the debtor's business". In re Velo Holdings Inc., 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); In re Borders Group, Inc., 453 B.R. at 471 (quoting In re Dana Corp., 358 B.R. 567, 571 (Bankr. S.D.N.Y. 2006) ("Dana II")).

20. Section 503(c) of the Bankruptcy Code also precludes "transfers or obligations that are outside of the ordinary course of business and not justified by the facts and circumstances of the case. . ." 11 U.S.C. § 503(c)(3). The "facts and circumstances of the case," analysis is "no different than the business judgment standard under section 363(b)." In re Borders Group, Inc., 453 B.R. at 473; see also In re Velo Holdings Inc. at 212; In re Mesa Air Group, Inc., 2010 WL 3810899, at **3 (Bankr. S.D.N.Y. Sept. 24, 2010). In reviewing whether a proposed plan meets the requirements of section 503(c), courts analyze several factors, including:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

Dana II, 358 B.R. at 576-77 (emphasis in original); see also In re Borders Group, Inc., 453 B.R. at 474-77 (applying Dana II factors).

I. **THE KERP**

21. The KERP is a pay-to-stay retention program structured to retain Mr. Damiano through the closing of a sale transaction or the effective date of a plan of reorganization. The Bankruptcy Court has recognized that, "as an initial matter, the Court must determine whether each eligible key employee under a key employee plan is an 'insider' within the meaning of section 101(31)." In re Borders Group, Inc., 453 B.R. at 467. Should a court determine that an employee is an insider, the employee may be prevented from participating in a retention plan such as the KERP. See id. However, to the extent that a key employee plan applies only to non-insiders, courts analyze the propriety of the plan under Bankruptcy Code section 503(c)(3). Id. at 473.

   a. **Structure of the KERP**

22. The KERP has been tailored to provide incentives only to Mr. Damiano to remain with the Debtor to assist in realizing a successful reorganization, either through a sale transaction or a plan of reorganization. The Trustee is proposing to pay Mr. Damiano (i) the Annual Bonus in the amount of $31,250, which is equal to approximately 25% of his base annual compensation, to be earned on the sooner of (a) the effective date of any plan of liquidation or reorganization, (b) closing on a sale of the hotel assets or (c) December 31, 2018 (each of (i), (ii) and (iii) shall be referred to as an "Award Determination Event"), and to be paid as soon as is practicable thereafter, provided that Mr. Damiano is employed by the Debtor at the time the bonus is earned and is performing his duties in accordance with the terms of his employment agreement with the Debtor, and (ii) the Transaction Bonus of $20,000 to be earned on the sooner of the effective date of any plan of liquidation or reorganization or closing on a sale of the hotel assets, regardless of the date of occurrence of such event, and paid as soon as is practicable thereafter,

9

provided that he is employed by the Debtor at the time the bonus is earned and is performing his duties in accordance with the terms of his employment agreement with the Debtor. Payout is contingent on Mr. Damiano being actively employed on the date of an Award Determination Event.

### b. Mr. Damiano is Not an Insider

23. "[I]nsider status can also be determined on a case-by-case basis from the totality of the circumstances, including the degree of an individual's involvement in a debtor's affairs." In re Velo Holdings, Inc. at 208. In such cases, insiders must have "at least a controlling interest in the debtor or . . . exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." Id. (citation omitted).

24. Neither "officer" nor "director" is defined in the Bankruptcy Code. However, the Bankruptcy Court has concluded that "with respect to Bankruptcy Code section 101(31)(b)(i) 'director' means an individual who sits on the board of directors of a corporation." In re Borders Group, Inc., 453 B.R. at 468. The term "officer" in section 101(31) of the Bankruptcy Code includes those persons "elected or appointed by the board of directors to manage the daily operations of a corporation, such as the CEO, president, secretary, or treasurer." Id. (quoting BLACK'S LAW DICTIONARY 1193 (7th ed.1999)). However, "an individual's title, by itself, is insufficient to establish that an individual is a director or officer." In re Borders Group, Inc., 453 B.R. at 468- 69. Instead, courts must look at the role of the employees on a case-by-case basis to determine if, for instance, the employee has the authority to implement company policy or whether the employee reports directly to a company's board of directors. See Id. at 469.

25. Mr. Damiano is not an officer and does not have management or decision-making authority akin to an executive or have any ability to dictate overall company policy. See Stevens

Declaration, ¶ 20. Significantly, only the Trustee has authority to make executive level decisions for the Debtor, except to the extent that the third-party Manager (and not Mr. Damiano) has contractual authority to make certain management decisions. See Stevens Declaration, ¶ 20.

26.  Accordingly, the Trustee submits that Mr. Damiano is not an "insider" within the meaning of section 101(31) of the Bankruptcy Code.

c.  **The KERP Is Not Prohibited By Section 503(c) of the Bankruptcy Code**

27.  Because the KERP applies only to non-insiders of the Debtor, the appropriate inquiry for the Court is whether the KERP satisfies section 503(c)(3) of the Bankruptcy Code. See In re Borders Group, Inc., 453 B.R. at 473. Here, the facts and circumstances of these cases justify the KERP, which constitutes a sound exercise of the Trustee's' business judgment, and satisfies each of the Dana II factors for all the applicable reasons set forth below, and therefore satisfies section 503(c)(3) of the Bankruptcy Code.

28.  The KERP is designed to retain Mr. Damiano by providing him with job security and appropriate compensation, thus preventing his departure and the resulting loss of going concern value before an Award Determination Event. See Stevens Declaration, ¶ 9. Without the KERP, it is very likely that Mr. Damiano will seek alternative employment, which would damage the Trustee's ability to operate the Debtor's business. See Stevens Declaration, ¶ 9. The Trustee cannot afford to lose Mr. Damiano during this time of transition. See Stevens Declaration, ¶ 9. Relying on a replacement to perform Mr. Damiano's critical day to day functions would damage the value of the Debtor's business. See Stevens Declaration, ¶ 9.

29.  The scope of the KERP is reasonable and appropriate, and its expense is reasonable in light of the size of the Debtor's historical revenues and Mr. Damiano's base salary.

### d. **The KERP is Justified by the Facts and Circumstances of the Case**

30. Mr. Damiano is necessary to ensure an efficient bankruptcy process and to provide the Trustee with an opportunity to reorganize the Debtor's business through a sale transaction. See Stevens Declaration ¶ 11. As set forth in the Stevens Affidavit, Mr. Damiano's duties include the following:

**GENERAL MANAGEMENT:**
- Supervise and develop performance of all hotel operating departments.
- Conduct regular briefings and meetings with department managers to check performance progress, goal & objective updates and ensure constant communication.
- Create, implement and ensure full compliance of operating controls, SOP's, policies, procedures and service standards.
- Responsible for handling all guest and employee concerns, complaints and issues including prompt investigation and resolution.
- Promote hotel in industry or trade organizations.
- Ensure regular upkeep, repair and overall general maintenance of hotel and system of on-going maintenance of facilities and equipment.

**FINANCIAL:**
- Responsible for the preparation, presentation and subsequent achievement of hotel's Operating Budget, Sales and Marketing Plan and Capital and Renovation Budget (as needed).
- Manage on-going profitability of the hotel, ensuring revenue, payroll, cost of sales and operating costs and goals are met if not exceeded.
- Develop and implement cost savings initiates and strategies.
- Profit and Loss analysis and management.
- Prepare monthly ownership reports.
- Ensure that monthly financial outlooks for Rooms, Food & Beverage (as needed), and Sales are on target and accurate. Review and identify areas of concern and develop plans to address as needed.
- Work with Sales and Revenue Management teams to maximize room yield and hotel revenue through innovative sales practices and yield management programs.
- Assist with procurement of operating supplies and equipment, and contracting with third-party vendors for essential equipment and services as necessary.

**MISCELLANEOUS:**

- Participate on committees and special projects as needed.
- Travel, as necessary, to different properties/venues.

- Perform all reasonable requests by the management team.
- Attend and participate in all scheduled meetings and training sessions.

See Stevens Declaration ¶ 5. Given his high level of involvement in the day to day operations of the Hotel, he is not easily replaceable. The KERP provides Mr. Damiano with a retention payment based upon the effective date of a plan of reorganization or the closing of a sale transaction, with awards vesting as of the occurrence of either the effective date of a plan or the closing of a sale transaction. As such, the KERP provides an essential motivation to Mr. Damiano to refrain from seeking alternative employment throughout the duration of the Debtor's case.

31. The KERP's cost is reasonable in the context of the Debtor's assets, liabilities, and earning potential. As noted above, the total maximum cost of the KERP, is approximately $51,250.00, which represents approximately 0.98 % of the Debtor's 2017 revenue. See Stevens Declaration, ¶ 15.

32. The scope of the KERP is fair and reasonable, as it applies only to Mr. Damiano who is viewed as key to preserving value throughout the bankruptcy case, and thus is critical to the achieving the objective of allowing the Debtor to exit from bankruptcy on an expedited timeframe. See Stevens Declaration, ¶¶ 16-17

33. Incentive plans similar to the KERP have been approved by courts in this district and nothing about the KERP is inconsistent with industry standards.

34. The KERP has been carefully formulated after due diligence. The Trustee and his professionals considered the value of all employees in developing the KERP and selected only Mr. Damiano who is most critical to preserving value during the pendency of the Debtor's case. See Stevens Declaration, ¶ 12.

35. The Trustee actively sought input from his counsel and the Manager, during the KERP development process. See Stevens Declaration, generally. Accordingly, it is respectfully submitted that the KERP is not prohibited by section 503(c)(3) of the Bankruptcy Code and should be authorized.

36. Accordingly, the Trustee respectfully submits that the KERP is justified by the facts and circumstances of the Debtor's case, and that implementation of the KERP is in the best interests of the Debtor, its estate, its creditors, and all other stakeholders.

## NOTICE

37. Notice of this Motion will be given to: (a) the Office of the U.S. Trustee; (b) all required governmental entities; (c) the Debtors' twenty largest unsecured creditors; and those parties that have filed a notice of appearance in the Bankruptcy Cases. The Trustee submits that, under the circumstances, no other or further notice is required.

38. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

**WHEREFORE**, for all the foregoing reasons, the Trustee respectfully requests entry of an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested herein, and such other further relief as the Court deems just and equitable.

Dated: New York, New York
September 28, 2018

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s Brendan M. Scott*
Tracy L. Klestadt
Fred Stevens
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
fstevens@klestadt.com
bscott@klestadt.com

*Counsel for Fred Stevens, Chapter 11 Trustee*